FORTY–NINER SIERRA RESOURCES, INC., dba Forty–Niner Subaru, Plaintiff,

v.

SUBARU OF AMERICA, INC., Defendant.

No. CVF00–6250REC SMS.

United States District Court, E.D. California.

Jan. 10, 2005.

Bonny E. Sweeney, Helen I. Zeldes, Lerach Coughlin Stoia Geller Rudman and Robbins LLP, San Diego, CA, Michael Barry Arkin, McGeorge School of Law, Inst for the Admin of Justice, Sacramento, CA, for plaintiff.

Evan Keith McNamara, Robert E. Davies, Caulfield Davies and Donahue LLP, Sacramento, CA, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION OR IN THE ALTERNATIVE SUMMARY JUDGMENT. (Doc. 141)

COYLE, District Judge.

On December 6, 2004 the Court heard Defendant Subaru of America's motion for summary judgment or summary adjudica-

tion. Upon due consideration of the written and oral arguments of the parties and the record herein, the Court grants Defendant's motion for summary adjudication of Plaintiff's unfair competition claims on the grounds that Defendant's conduct was not unlawful and California law provides a safe harbor for Defendant's contractual agreements with Plaintiff.

## I. Background

Plaintiff Forty–Niner Sierra Resources, Inc., dba Forty–Niner Subaru ("Forty–Niner" or "Plaintiff") is a California Corporation and Subaru franchisee that sells and services Subaru automobiles and provides warranty services for owners of Subaru automobiles. Defendant Subaru of America ("SOA" or "Defendant") is a national distributor of Subaru automobiles in the United States.

Plaintiff brings this class action on behalf of itself and all of SOA's warranty service providers in California.[1] Plaintiff contends that Defendant compensated it and other SOA warranty service providers in California for parts[2] used in warranty repair services at rates that violate section 1793.5 of the Song–Beverly Consumer Warranty Act ("Song–Beverly"), California Civil Code section 1790 *et seq.*. Plaintiff also alleges that Defendant's conduct constitutes unfair and unlawful business practices in violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code section 17200, *et seq.*. Plaintiff seeks direct, consequential and statutory treble damages, declaratory and injunctive relief and attorneys' fees.

## II. Procedural History

This case was originally filed on October 27, 1998 in the Superior Court of Calaveras County. Forty–Niner and its owner, Richard E. Wilmshurst were originally named as plaintiffs in the class action. On July 21, 2000 a First Amended Complaint ("FAC") was filed, naming only Forty–Niner as Plaintiff. Defendant removed the case to federal court on August 25, 2000 on the basis of diversity.

On November 30, 2001, this Court entered an order granting Defendant's motion for judgment on the pleadings on the grounds that Plaintiff could not proceed under Song–Beverly. The Court denied relief under Song–Beverly because liability under section 1793.5 arises only where such service repair facilities are not provided and Plaintiff "admitt[ed] that SOA authorizes their facilities to perform warranty services" in oral representations to the Court. Order Granting Def.'s Mot. for J. on Pleadings, Nov. 30, 2001.

On March 4, 2002, the Court entered an order granting in part and denying in part Plaintiff's Motion for Reconsideration. In that motion Plaintiff argued that it had never admitted that SOA had authorized and designated it a warranty service and repair facility. At oral argument on the motion on October 29, 2001, Plaintiff's counsel Bonny E. Sweeney represented otherwise to the Court. Plaintiff's counsel later explained that these representations were misstatements. The Court granted the motion for reconsideration with the following instruction: "[i]f defendant can establish that plaintiff has affirmatively been designated and authorized as an independent service and repair facility, this issue may be resolved through summary

1. This class has yet to be certified.

2. Plaintiff does not challenge the rates that SOA pays for the labor involved in the warranty repair services, which appear to be the same as the rates charged in non-warranty repairs.

judgment." Order Granting in Part and Den. in Part Pl.'s Mot. for Recons., Mar. 4 2002.

Defendant subsequently moved for summary judgment or summary adjudication on March 13, 2003. Twenty-five days after Defendant's motion was filed, Plaintiff filed a cross-motion for summary judgment and a motion for leave to amend its FAC. Plaintiff sought to add an alternative claim under Song–Beverly section 1793.6, which provides a cause of action for an independent service and repair facility ("ISRF").

On May 18, 2004, the Court entered an order granting summary adjudication in favor of Defendant on Plaintiff's Song–Beverly claims, denying Plaintiff's cross-motion for summary judgment in its entirety and denying Plaintiff's request for leave to amend. A claim under section 1793.5 can only be imposed if a manufacturer does not either maintain service facilities or designate and authorize ISRFs in California. Plaintiff's claim failed, as the Court held:

> Summary adjudication is granted in Defendant's favor on Plaintiff's claims under the Song–Beverly Act, on the grounds that SOA designated and authorized Forty–Niner as an ISRF (independent service and repair facility). Although Defendant never expressly designated and authorized Forty–Niner as an ISRF in writing, Defendant's conduct in paying for the repairs that Plaintiff actually performed, coupled with the contractual agreements that expressly required Plaintiff to perform warranty services and repairs, served to designate and authorize Plaintiff as an ISRF.

Order Granting Def.'s Mot. for Summary J., Den. Pl.'s Mot. for Summary J., Den. Pl's Mot. to Am. at 15, March 4, 2003 ("Summary Judgment Order").

The Court denied Plaintiff's motion for summary judgment as to the Song–Beverly claims because Forty–Niner, as a designated and authorized ISRF, was not entitled to recovery under Section 1793.3. Summary Judgment Order at 17. The Court denied Plaintiff's motion as to the unfair competition claim as follows:

> Plaintiff raised three grounds for relief under UCL Section 17200, alleging that Defendant's practices are unlawful, unfair, and fraudulent. The court finds that Defendant complied with Song–Beverly and, therefore, Plaintiff is not entitled to Summary Judgment on the grounds that Defendant violated the "unlawful" prong of Section 17200. Plaintiff did not present any evidence or argument to the court in support of its motion for summary adjudication on the grounds that Defendant's practices were unfair or fraudulent. Therefore, Plaintiff's motion is denied with respect to the Section 17200 claim.

Summary Judgment Order at 17–18.

The Court also denied Plaintiff's motion to amend its FAC. The motion, filed more than four years into the litigation, sought to add a claim under Song–Beverly based on allegations that SOA's warranty parts reimbursement rates do not provide Plaintiff a reasonable profit in accordance with Song–Beverly section 1793.6. In denying the motion, the Court characterized it as a "last-minute attempt to take a second bite at a vanishing apple" and determined that "Plaintiff's dilatory behavior," Plaintiff's attempt to amend to avoid summary judgment, and the prejudice to SOA outweighed the fact that Plaintiff's proposed claim was not frivolous. Summary Judgment Order at 28.

## III. Defendant's Current Motion

Defendant moves for summary judgment or summary adjudication on Plain-

tiff's section 17200 claim for unfair competition. This claim is alleged in the FAC as follows:

The business acts and practices of SUBARU as alleged herein constitute unlawful and unfair business acts and practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

SUBARU has engaged in "unlawful" business acts and practices by compensating Class members for warranty parts in an amount less than Class members would have received by rendering like service and parts to retail customers who are not entitled to warranty protection, in violation of Civil Code § 1793.5.

SUBARU has also engaged in "unfair" business acts or practices in that the justification for under-compensating Class members for warranty parts is outweighed by the harm the practice causes to members of the Class and the general public, and because it offends the public policies underlying the Song–Beverly Consumer Warranty Act.

FAC at ¶¶ 34–36.

Defendant presents multiple grounds for granting summary judgment or summary adjudication including: SOA's practices were not unlawful; California law provides a safe harbor for SOA's practices; SOA's practices are not unfair under California law, and Plaintiff has produced no evidence to the contrary; Plaintiff contractually released its claims in the Dealership Agreements; the New Motor Vehicle Board ("NMVB") has exclusive jurisdiction in this case; Plaintiff failed to exhaust its administrative remedies with the NMVB; and the Court should stay the current proceedings and refer the matter to the NMVB under the Doctrine of Primary Jurisdiction. Defendant's first two arguments relating to the section 17200 claim suffice to support summary judgment in favor of Defendant.

## IV. Undisputed Facts

In 1981, Plaintiff and Defendant executed a contractual agreement wherein Defendant appointed Plaintiff as an authorized dealer for Subaru products. The Dealership Agreement reads:

Distributor hereby appoints Dealer as an authorized dealer for Subaru products and Dealer accepts the appointment under the terms and conditions of this Agreement. Dealer assumes responsibility for the promotion, sale and service of Subaru Products within the following primary area . . . .

Def.'s Statement of Undisputed Facts ("SUF") No. 7. Plaintiff and Defendant have executed similar dealership agreements with similar language over the past twenty years. *Id.*

Subsequent Dealership Agreements incorporate the provisions of the "Subaru Dealership Agreement Standard Provisions booklet" ("SOA Standard Provisions booklet") in their terms. Various provisions of the SOA Standard Provisions booklet are relevant to the present motion. Section 13.3 (section 15.1 in the most recent version of the booklet) provides as follows:

WARRANTY PROCEDURE. The procedure for the processing and disposition of Warranty claims and for the return and disposition of Authorized Parts claimed to be defective shall be governed by the dealer version of the Subaru Warranty Manual and by any applicable Distributor Directive consistent with said manual. ***Dealer shall be reimbursed by distributor*** for Authorized Parts and Warranty Labor ***in accordance with Section 18.5 hereof. Dealer agrees such reimbursement shall constitute full and complete payment***

*to Dealer for such work* and further agrees that customer shall not be obligated to pay any charges for Warranty work.

Def.'s SUF No. 43 (emphasis added). Section 18.5 of the SOA Standard Provisions Booklet (section 20.5 in the most recent version) provides, in pertinent part, that:

To the extent that Distributor requires Dealer to furnish labor or to use Authorized Parts to fulfill Dealer's obligation under Sections 9.2, 10.2, 10.4, 10.5, 11.8 or 13.3 hereof, *Distributor shall reimburse or credit Dealer* for such Authorized Parts and/or labor as the case may be, *at such rate or rates as Distributor is authorized to establish from time to time.* Distributor shall advise Dealer of the applicable rates, which will be established in each instance with due regard for any applicable law.

Def.'s SUF No. 44 (emphasis added).

SOA also issued a manual entitled the "Policies and Procedures Manual" ("PPM") to Forty–Niner. Under section 5 of the October 1991 version of the PPM, "[t]he repairing dealer will be reimbursed for: Dealer Preparation, Warranty Repairs, recall inspections and corrections, and other designated services as detailed in this manual." Section 5 also sets forth warranty labor rates, body repair labor rates, and reimbursement rates for parts, accessories, and materials used in the performance of warranty repairs. Def.'s SUF No. 46.

The 1991 PPM was revised on five occasions: June 1996, December 1997, November 1999, June 2001 and June 2002. Def.'s SUF No. 47. Section 8.4.27 of all subsequent versions of the PPM contains the following language regarding warranty service repair reimbursement:

Repair labor reimbursement is determined by the labor times published in the Subaru Warranty Labor Time Guide that applies to the vehicle.... [L]abor times are representative of the time required by a trained Subaru technician in a typical Subaru dealership using normally available hand tools, equipment and Subaru special tools to perform repairs.

Defendant reimburses Plaintiff for warranty labor at the retail rate. Section 13.8.3.2 establishes the reimbursement rate for parts:

Parts will be reimbursed based on the cost of the part at the time of repair completion. In addition, compensation for parts handling will be reimbursed as follows:

Non–Retail States [California]

• 1993 and prior model year vehicles will be reimbursed at Dealer Cost plus a 30% handling allowance.

• 1994 and subsequent model year vehicles will be reimbursed at Dealer Cost plus a 40% handling allowance for any part with a Dealer Cost less than $500. Any part with a Dealer Cost greater than $500 will be reimbursed at MSRP [Manufacturer's Suggested Retail Price].

Def.'s SUF No. 40.

## V. Discussion

### A. Legal Standard

Summary judgment is proper when it is shown that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A fact is "material" if it is relevant to an element of a claim or a defense, the existence of which may affect the outcome of the suit. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Mate-

riality is determined by the substantive law governing a claim or a defense. *Id.* The evidence and all inferences drawn from it must be construed in the light most favorable to the nonmoving party. *Id.*

The initial burden in a motion for summary judgment is on the moving party. The moving party satisfies this initial burden by identifying the parts of the materials on file it believes demonstrates an "absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to defeat summary judgment. *T.W. Elec.,* 809 F.2d at 630.

The nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment," but must set forth by affidavit or other appropriate evidence "specific facts showing there is a genuine issue for trial." *Id.* (citing Fed.R.Civ.P. 56(e)). The nonmoving party may not simply state that it will discredit the moving party's evidence at trial; it must produce at least some "significant probative evidence tending to support the complaint." *Id.* (citing *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

## B. Section 17200

■ California's Unfair Competition Law ("UCL") is codified at section 17200 *et seq.* of the Business and Professions Code. Section 17200 defines "unfair competition" to mean "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. Prof.Code § 17200. It "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." *Cel–Tech Communications, Inc. v. Los Angeles Cel-*lular Tel. Co., 20 Cal.4th 163, 180, 83 Cal. Rptr.2d 548, 973 P.2d 527 (1999) (internal quotations omitted).

### 1. Unlawful or Fraudulent Practices

Plaintiff has not alleged that Defendant has engaged in fraudulent business practices. Def.'s SUF No. 22 (undisputed by Plaintiff). Additionally, in the Summary Judgment Order, the Court stated that it found "Defendant complied with Song–Beverly and, therefore Plaintiff is not entitled to Summary Judgment on the grounds that Defendant violated the 'unlawful' prong of Section 17200." Plaintiff does not dispute that its "unlawful" claim pursuant to section 17200 is barred by this ruling. Pl.'s Opp'n to Def.'s SUF at 9. Accordingly, Defendant is entitled to summary adjudication of Plaintiff's section 17200 claim alleging unlawful business practices. The remaining issue is whether Defendant's practices are unfair within the meaning of the UCL.

### 2. Unfair Practice Claims—Safe Harbor Provisions

■ The unfair prong of the UCL "undeniably establishes only a wide standard to guide courts." *Cel–Tech,* 20 Cal.4th at 181, 83 Cal.Rptr.2d 548, 973 P.2d 527. "Although the unfair competition law's scope is sweeping, it is not unlimited. Courts may not simply impose their own notions of the day as to what is fair or unfair." *Id.* at 182, 83 Cal.Rptr.2d 548, 973 P.2d 527. "If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Id.*

Defendant argues that the California legislature has provided it with not one

but three separate safe harbor provisions that allow reimbursement of parts at below the retail rate, thus creating a safe harbor and precluding Plaintiff's unfair competition claim. These provisions include Song–Beverly section 1793.2(a)(1)(B), Business and Professions Code section 17042, and Vehicle Code section 3065. Plaintiff argues that the "legislature has specifically decreed that an independent service and repair facility is entitled to reimbursement for warranty repairs in an amount 'equal to that which is charged by the independent serviceman for like services or repairs rendered to service or repair customers who are not entitled to warranty protection.'" Pl.'s Opp'n at 10 (citing Cal. Civ.Code § 1793.6).

Because section 1793.2(a)(1)(B) provides a sufficient safe harbor, the Court will not address Defendant's assertion that section 17042 of the Business and Professions Code or section 3065 of the Vehicle code also provide safe harbors.

### a. Section 1793.2(a)(1)(B)

■ Defendant asserts that "the California legislature, in establishing its comprehensive legislative scheme for the new motor vehicle industry, specifically authorizes and permits automotive franchisors to reimburse their ISRFs for warranty parts at a rate below retail." Def.'s Mot. at 13. Section 1793.2(a)(1)(B) specifies the duties of a manufacturer making an express warranty. It provides that:

> (B) As a means of complying with this paragraph, *a manufacturer may enter into warranty service contracts with independent service and repair facilities. The warranty service contracts may provide for a fixed schedule of rates to be charged for warranty service or warranty repair work.* However, the rates fixed by those contracts shall be in conformity with subdivision (c) of Section 1793.3. *The rates established pursuant to subdivision (c) of Section 1793.3, between the manufacturer and the independent service and repair facility, shall not preclude a good faith discount* which is *reasonably related to reduced credit and general overhead costs factors* arising from the manufacturer's payment of warranty charges direct to the independent service and repair facility. . . .

Cal. Civ.Code § 1793.2(a)(1)(B) (emphasis added). In turn, section 1793.3(c) provides that, in the event a manufacturer does not provide a ISRF, a buyer may:

> (c) Secure the services of an independent repair or service facility for the service or repair of the nonconforming goods, when service or repair of the goods can be economically accomplished. In that event *the manufacturer shall be liable* to the buyer, or to the [ISRF upon assignment] *for the actual and reasonable cost of service and repair,* including any cost for parts and any reasonable cost of transporting the goods or parts, plus a reasonable profit. *It shall be a rebuttable presumption affecting the burden of producing evidence that the reasonable cost of service or repair is an amount equal to that which is charged by the independent service dealer for like services or repairs rendered to service or repair customers who are not entitled to warranty protection.* Any waiver of the liability of a manufacturer shall be void and unenforceable.

Cal. Bus. Prof.Code § 1793.3(c) (emphasis added). Additionally, section 1793.6, which governs the warranty repair rates between manufacturers and ISRFs, provides that "[e]xcept as otherwise provided in the terms of a warranty service contract, as specified in subdivision (a) of Section

*1793.2*," a manufacturer shall be liable for the cost of repairs. Cal. Civ.Code § 1793.6. Like section 1793.3, section 1793.6 further provides that it "shall be a rebuttable presumption" that the cost of service and repair is the retail rate. *Id.*

Plaintiff argues essentially that because section 1793.6 requires reimbursement of warranty repairs at the retail rate, Defendant must pay Plaintiff the retail rate. Plaintiff, both at oral argument and in its opposition, fails to address either the contract provision of section 1793.2(a)(1)(B) or the "[e]xcept as otherwise provided" language in section 1793.6. The Court declines to accept Plaintiff's blanket assertion that reimbursement must be at the retail rate.

Instead, the Court interprets the three provisions quoted above to mean that a manufacturer may enter into contracts with its ISRFs that set the rates to be paid for warranty repairs, including parts. If no rate is agreed upon, the default rate is the retail rate; if there is an agreement, a "good faith discount" is allowable. In *Cel–Tech,* 20 Cal.4th at 188, 83 Cal.Rptr.2d 548, 973 P.2d 527, the California Supreme Court held that the "good faith sales that section 17026.1 permits may not be deemed unfair under the unfair competition law." So long as the discount here is in good faith, section 1793.2(a)(1)(B) provides a safe harbor.

### b. Good Faith Discount

The parties have not submitted the fee schedule by which warranty parts are reimbursed; nor have they stated what percent discount is applied. However, Plaintiff's financial records have been submitted and both parties discuss them. According to the declaration of Mr. Wilmshurst, the owner of Forty–Niner, between 1994 and 1997 Defendant reimbursed Forty–Niner at a gross profit margin of approximately 21 to 28 percent. Mr. Wilmshurst also declares that during that time Forty–Niner sold parts to non-warranty customers at a gross profit margin of approximately 40 percent. Although the question is whether the discount provided in the reimbursement contracts is in good faith, the discount here is apparently somewhere in the neighborhood of 15 percent.

Defendant asserts that it applies a good faith discount in its reimbursement schedule. In support of this assertion, Defendant cites to the declaration of Victor D. Nelawake, Defendant's expert. Mr. Nelawake is a "Certified Public Accountant with 28 years of experience in public accounting." Nelawake Decl. at ¶ 1. Mr. Nelawake has "extensive experience in the analysis of retail automobile dealerships, including assessment of the numerous factors that impact dealership profitability." *Id.* Mr. Nelawake has testified as an expert witness in matters involving automobile manufactures and dealers numerous times in federal and state court, and has testified before the California NMVB approximately 20 times. Mr. Nelawake is "familiar with the schedules, formulas, rates, policies, procedures and practices regarding labor and parts reimbursement in the retail automotive industry." *Id.*

In forming his opinions regarding this case, Mr. Nelawake reviewed SOA's franchise dealer agreements and incorporated documents as well as other documents regarding Plaintiff's claims in this matter, including Plaintiff's financial statements for the years 1994 through 2002. According to Mr. Nelawake, the "warranty reimbursement system established by SOA considers a good faith discount related to the dealer's reduced credit risk and SOA's general overhead cost factors arising from SOA's payment of warranty charges directly to its dealers." Nelawake Decl. at ¶ 8. Defendant thus argues that its compli-

ance with section 1793.2(a)(1)(B) precludes an unfair practices claim.

Plaintiff does not address this argument directly. Plaintiff does, however, in its opposition to Defendant's SUF, state that Plaintiff "disputes that SOA's reimbursement practice is in good faith" and objects to the statement of Mr. Nelawake as a legal conclusion, stating that "whether SOA's reimbursement practice constitutes 'good faith' is a hotly disputed legal issue." Pl.'s Opp'n to Def.'s SUF No. 29.

As to the "legal conclusion" objection, it is without merit. Under Rule 704 of the Federal Rules of Evidence an expert witness in a civil case is allowed to testify to an "ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704(a). At oral argument, Plaintiff suggested that Mr. Nelawake is a lay witness. It is apparent both from his credentials and Defendant's papers that Mr. Nelawake is proffered as an expert witness.

■ As to the dispute regarding "good faith," Plaintiff does not cite any supporting authority for its claim that Defendant's discount is not in good faith. The declaration of Mr. Wilmshurst does not allege that the rates set are not in good faith or are unrelated to reduced credit risks or overhead costs. Construing the evidence liberally in favor of Plaintiff, the nonmoving party, it appears that Plaintiff argues that the difference in gross profits from the sale of parts between non-warranty and warranty customers, approximately 15%, evidences Defendant's bad faith. This percentage difference does not, without more, constitute evidence of bad faith; it merely evidences the existence of a discount. This is especially true in light of Plaintiff's other business practices. Defendant points out that between 1994 and 1997 Plaintiff voluntarily sold parts to third parties at a gross profit margin nearly identical to that provided by Defendant's reimbursements. Even if the mere existence of a discount could show bad faith, it does not in this case given Plaintiff's apparent willingness to accept the same gross profit margin from its own transactions.

Defendant has met its burden of demonstrating that there is an "absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Defendant has demonstrated that there is no genuine issue of material fact regarding its good faith discount. To survive summary judgment, Plaintiff must do more that simply deny Defendant's evidence. Plaintiff must produce evidence supporting the claim and demonstrating that there is an issue for trial. Plaintiff has failed to do so in this case.

Defendant has presented evidence that it has entered into warranty service contracts that provide for a good faith discount of the amounts to be paid for warranty parts, as provided in Song–Beverly section 1793.2(a)(1)(B). Because Plaintiff has presented no evidence that Defendant's discount is not in good faith, section 1793.2(a)(1)(B) provides a safe harbor for Defendant's conduct. Under California law, this precludes Plaintiff's claim for unfair business practices. Summary adjudication of this claim is granted in favor of Defendant.

**ACCORDINGLY, IT IS ORDERED** that summary judgment as to Plaintiff's remaining claims of unfair or unlawful business practices is GRANTED in favor of Defendant.

IT IS SO ORDERED.